IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**SHAWN MICHAEL MARTIN,**

       Plaintiff,

    v.

**GARTH GULICK, M.D. et al.,**

       Defendants.

Case No. 2:14-cv-00525-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Shawn Michael Martin ("Martin") is proceeding *pro se* in this 42 U.S.C. § 1983 civil rights action.  At the time Martin filed his Amended Complaint, he was in the custody of the Oregon Department of Corrections ("ODOC").  (Am. Compl., ¶ 5.)  In his Amended Complaint, Martin identifies the legal basis for his claims as "[d]eliberate indifference; reckless disregard; intentional infliction of pain; retaliation; misapplication of [Oregon Department of Corrections] Administrative Rules; gross negligence; deliberate indifference to a prisoner's serious medical

PAGE 1 – FINDINGS AND RECOMMENDATION

needs; condition [sic] deprivation of medication; mental, emotional, and physical pain and suffering; excessive force and violation of due process." (Am. Compl., ¶ 9.) Defendants Bennett, Bristol, Brown, Clayton, Coffey, Contresas, Gilmore, Braybill, Gruenwald, Gulick, Hanson, Henry, Hillmick, Ingersoll, Jennings, Jones, Lande, Litano, McMillen, Munk, Nooth, Payne, Pena, Ransier, Rochester, Shelton, Shook, Taylor, Thurmond, Townes, and Wettlaufer[1] (collectively "Defendants") move for partial summary judgment on procedural grounds and partial summary judgment based on a lack of genuine issue of material fact. Between the two motions, Defendants seek summary judgment on all of Martin's claims against them.

The court finds Martin's claims fail to set forth plausible claims for relief, fail to set forth genuine issues of material fact for trial, or are barred on procedural grounds. Therefore, Defendants' motion for partial summary judgment on procedural grounds (Dkt No. 68) and motion for partial summary judgment for lack of genuine issue of material fact (Dkt No. 69) should be granted.

*Background*

Martin's claims stem from incidents that occurred while he was incarcerated at Oregon State Penitentiary ("OSP"), Two Rivers Correctional Institution ("TRCI"), and Snake River Correctional Institute ("SCRI"). Most of Martin's claims relate to the medications he needs to treat his Hepatitis C infection. For example, one of Martin's claims alleges that he was subjected to excessive force when a prison guard grabbed his wrists as he was leaving the "medication line." (Am. Compl., ¶ 16.) Martin contends, if he had defended himself against the excessive force, he "would of [sic] been denied medications needed to fight Hepatitis C . . . for being 'too aggressive.'" (*Id.*) Martin also alleges in several of his claims he was not given his Hepatitis C

---

[1] The court dismissed Martin's claims against defendant Rodriguez on December 10, 2015. (Dkt No. 78.)

PAGE 2 – FINDINGS AND RECOMMENDATION

medications at the appropriate times. (Am. Compl., ¶¶ 18-25.) Some claims, however, relate to other issues, such as Martin's allegations that he was denied adequate dental care, his legal documents were destroyed or removed, or he was denied protection during transport because the prison denied his request to have a "camera present" when guards escorted him. (Am. Compl., ¶¶ 51, 70-82.)

On October 21, 2015, Defendants filed a partial motion for summary judgment on procedural grounds asserting many of Martin's claims are: (1) not exhausted as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) fail to state a claim upon which relief can be granted; or (3) barred by the Eleventh Amendment of the United States Constitution or claim preclusion. (Defs.' Mot. Summ. J. and Supp. Mem. of Law on Procedural Grounds ("Procedural Summ. J. Mot."), Dkt No. 68.) The same day, Defendants filed a second motion for partial summary judgment based asserting Martin failed to raise genuine issues of material fact in his Amended Complaint. (Defs.' Mot. Summ. J. and Supp. Mem. of Law for Lack of Genuine Issue of Material Fact ("Fact Summ. J. Mot."), Dkt No. 69.) In this motion, Defendants contend Martin has not raised genuine, triable issues of fact in several of his claims, he fails to state a claim for injunctive relief, he is not entitled to punitive damages under the PLRA, and qualified immunity shields them from liability for Martin's Eighth Amendment deliberate indifference claims. (*Id.*)

On October 22, 2015, the day after Defendants filed their motions, the court issued a scheduling order notifying the parties that responses to the motions were due by November 30, 2015. (Summ. J. Advice Notice, Dkt No. 75.) As well as setting deadlines for Martin's response, the scheduling order explained the partial summary judgment motions, if granted, could end his case and explained what Martin needed to do to oppose the motions. (*Id.*) The

PAGE 3 – FINDINGS AND RECOMMENDATION

court served a copy of the scheduling order on Martin by mail; however, he did not file a response to either motion by the November 30, 2015 deadline.

Approximately two months later, on February 12, 2016, Martin filed a Motion for Extension of Time requesting, among other things, additional time to file a voluntary motion to dismiss his claims. (Plf.'s Mot. Extension of Time, Dkt No. 80.) After the court granted his motion, Martin moved to voluntarily dismiss this matter "with the option to refile this case at a later date." (Ct. Order Granting Plf.'s Mot. Extension of Time, Dkt No. 83 and Plf.'s Mot. Voluntarily Dismiss, Dkt No. 84.) The court observed, without expressing any opinion as to what statute of limitation applied to Martin's claims, that one or more of Martin's claims might be barred by the statute of limitations if he attempted to refile those claims in the future. (Ct. Order re Plf.'s Mot. Voluntarily Dismiss, Dkt No. 85.) In light of that information, the court directed Martin to notify the court by April 4, 2016, what claims he would like to dismiss without prejudice. (*Id.*) On April 4, 2016, Martin notified the court he did not wish to voluntarily dismiss any claims. (Plf.'s Wish Not to Voluntarily Dismiss, Dkt No. 86.) Accordingly, the court denied Martin's voluntary motion to dismiss and extended Martin's time to respond to Defendants' partial summary judgment motions to May 9, 2016. (Ct. Order Denying Plf.'s Mot. Voluntarily Dismiss and Ct. Scheduling Order, Dkt No. 87.) Martin did not file any response to Defendants' partial summary judgment motions.

### *Legal Standard*

At summary judgment, the moving party bears the initial burden of pointing out the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met by showing an absence of evidence to support the non-movant's case. *Id.* In order to defeat summary judgment, the non-moving party must then set forth "specific facts showing

there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted). The court views the record in the light most favorable to the non-moving party. *Id.* This is especially true when the non-movant is a *pro se* litigant. *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) (stating *pro se* pleadings are liberally construed, particularly where civil rights claims are involved). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotations and citation omitted).

*Discussion*

I.  Failure to Exhaust Administrative Remedies.

       *A. Exhaustion Requirements under the PLRA.*

       In their motion for summary judgment on procedural grounds, Defendants contend that many of Martin's claims must be dismissed because they have carried their burden of producing evidence that he did not exhaust his claims as required by the PLRA. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (stating "failure to exhaust under the PLRA is an affirmative defense the defendant must plead and prove") (internal quotations and citations omitted). The PLRA requires that an inmate exhaust all available administrative remedies before filing a civil rights action with respect to prison conditions in federal court, "even when the relief sought — monetary damages — cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

       Oregon has a grievance system for prisoners who want to challenge the conditions of their confinement. OAR 291-109-0140(1)(a) (an inmate may submit a written grievance "using the department's approved inmate grievance form (CD 117) in accordance with these rules"). Inmates are told how to file an appeal in the Inmate Orientation Packet they receive when they

arrive at an Oregon Department of Corrections ("ODAC") facility. (Declaration of Robert W. Hillmick ("Hillmick Decl."), ¶ 6, Dkt No. 6.) The inmate handbook provides information about the grievance process. (*Id.*) Information about the grievance process is also included in grievance forms. (*Id.*) An inmate must file a grievance "within 30 calendar days of the date of the incident giving rise to the grievance." OAR 291-109-0150(2). If an inmate is dissatisfied with the initial response to his or her grievance, the inmate may file an appeal within "14 calendar days of the date that the grievance response was sent to the inmate from the grievance coordinator." OAR 291-109-0170(1)(a) and (b). If the inmate receives an adverse decision on the first appeal, he or she may file a second appeal; this is characterized as "FINAL Appeal Process." (*Id.* at (2).) In order for a grievance to be exhausted, the inmate must have completed the second level appeal, which is the highest level appeal in the Oregon DOC's grievance system. *See, e.g., Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (explaining exhaustion requires an inmate to complete the highest level appeal in the grievance system).

If the undisputed facts viewed in a light most favorable to Martin show that he failed to exhaust all available administrative remedies, Defendants are entitled to summary judgment. *Albino*, 747 F.3d at 1166. If, however, there are disputed facts precluding summary judgment, the judge, not a jury, should resolve the disputed factual issues related to exhaustion "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170.

### B. Failure to Exhaust Administrative Remedies for Paragraphs 16, 17, 19, 23-26, 28-30, 33-38, 41, 42, 45, 49, 52, 53, 55, 60-64, 69, 72, 73, 81, and 82.

Defendants have produced admissible evidence in the declaration of TRCI Grievance Coordinator Robert W. Hallmick and its supporting attachments that establishes Martin failed to exhaust his administrative remedies for his claims in paragraphs 16, 17, 19, 23-26, 28-30, 33-38,

41, 42, 45, 49, 52, 53, 55, 60-64, 69, 72, 73, 81, and 82 of his Amended Complaint. (Hallmick Decl., ¶¶ 10-28, Dkt No. 6.)    Specifically, Defendants have shown that Martin failed to initiate grievances for several of the claims contained in those paragraphs.  For the claims for which he did file grievances, Defendants have established that Martin failed to exhaust the administrative process either because his grievances or appeals were rejected for failing to comply with ODAC's grievance procedures or because he failed to file first- or second-level appeals to grievance responses.  Martin has neither responded to Defendants' motion with specific facts showing the existence of a genuine, material factual dispute regarding whether he exhausted all or some of these claims nor requested additional time to respond to Defendants' motions. *Matsushita*, 475 U.S. at 587; *Albino*, 747 F.3d at 1166.  Accordingly, the court finds, because Martin has not met his burden at summary judgment, Defendants are entitled to summary judgment on Martin's claims in paragraphs 16, 17, 19, 23-26, 28-30, 33-38, 41, 42, 45, 49, 52, 53, 55, 60-64, 69, 72, 73, 81, and 82 of his Amended Complaint.[2]

II.  Failure to State a Claim.

    *A.  Requirement that a Plaintiff State a Claim Showing He is Entitled to Relief.*

Defendants also assert in their motion for summary judgment on procedural grounds that Martin fails to state a claim upon which relief can be granted in paragraphs 18, 27, 36, 46, 51, 54, 70, 71, and 80.  A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2).  The Ninth Circuit recently reiterated in *Eclectic Prop. East, LLC v. Marcus & Millichap Co.*, "entitlement to relief requires more than labels and conclusions[;] factual allegations must be enough to raise a right to relief above a

---

[2] Defendants also contend that Martin's claims in paragraphs 19, 23-26, and 64 are barred by the doctrine of res judicata, which includes both claim preclusion and issue preclusion. 18 Wright & Miller § 4402.  The court need not reach this argument, however, as these claims are barred by Martins' failure to exhaust.

PAGE 7 – FINDINGS AND RECOMMENDATION

speculative level." *Eclectic*, 751 F.3d 990, 995 (9th Cir. 2014) (citation and quotations omitted). A well-pleaded complaint may move forward even if the court believes that actual proof of a plaintiff's claims is "improbable" so long as the plaintiff includes sufficient facts to "cross the line between possibility and probability." *Id.*

"Establishing the plausibility of a plaintiff's complaint is a two-step process . . . ." *Id.* The court first identifies any pleadings that are not entitled to a presumption of truth because they are merely bald or conclusory or only "recite the elements of a cause of action." *Id.* at 996 (citation and quotations omitted); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 681 (holding that assertions that amount to "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" are conclusory and not entitled to a presumption of truth). Next, the court assumes that the remaining factual allegations are true and considers whether these remaining factual allegations "plausibly give rise to an entitlement to relief." *Id.* (citation and quotations omitted). If a plaintiff pleads facts that are only consistent with a defendant's liability, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotations omitted). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Star v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. *Martin's Retaliation Claim in Paragraph 18.*

In paragraph 18 of his Amended Complaint, Martin alleges a retaliation claim against defendant Contreras. (Am. Compl., ¶ 18.) Specifically, Martin claims that Contreras tried to provoke him to respond aggressively by saying "you brought sunshine with you" to another guard who escorted Martin into the infirmary. (*Id.*) According to Martin, defendant Contreras

knew that an aggressive response would have resulted in Martin no longer receiving his Hepatitis C medication and "suffer[ing] a slow[,] painful death." (*Id.*) Martin alleges he filed a grievance against defendant Contreras for referring to him as "sunshine," and defendant Contreras was untruthful in his response to the grievance. (*Id.*) Defendants assert that Martin fails to state a claim for retaliation.

Prisoners have a first amendment right to file grievances against prison officials and be free from retaliation for doing so. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A retaliation claim has five elements: (1) the retaliated-against conduct must be protected; (2) the defendant must have taken adverse action against plaintiff; (3) the plaintiff must allege a causal connection between the protected conduct and the adverse action; (4) the plaintiff must allege that the official's action would chill or deter a person ordinary firmness from future protected activities; and (5) the plaintiff must allege that the official's action did not advance the correct facility's legitimate goals. *Id.* at 1114-15.

Here, Martin makes no claim that defendant Contreras called him "sunshine" in retaliation for filing a grievance or for engaging in any other protected conduct. (Am. Comp., ¶ 18.) The claim reflects that Martin filed his grievance only *after* defendant Contreras allegedly referred to him as "sunshine." (*Id.*) Martin appears to allege that defendant Contreras called him "sunshine" in an effort to goad him into responding aggressively so that he would be taken off his medication. (*Id.*) These allegations, however, are not sufficient to state a plausible First Amendment retaliation claim. *Watison*, 668 F.3d at 1114-15 (listing elements of a First Amendment retaliation claim).

\ \ \ \ \

\ \ \ \ \

C. *Martin's Due Process Claims in Paragraphs 27, 36, 54, and 80.*

Martin alleges Defendants violated his right to due process by denying his grievances for "illegitimate reasons" and by denying him access to the courts when defendant Rochester allegedly refused to provide him with a small-claims packet at no cost. (Am. Comp., ¶¶ 27, 36, 54, and 80.) Defendants assert that Martin's due process claims fail to state a plausible claim for relief.

It is generally recognized that inmates have no due process right to a specific grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding a prisoner has no constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 885 F.2d 639, 640 (9th Cir. 1988) (rejecting prisoner's contention that the state's establishment of a grievance procedure created a liberty interest in due process because "[t]here is no legitimate claim of entitlement to a grievance procedure"). Accordingly, Martin's claims in paragraphs 27, 36, and 54 of his Amended Compliant that prison officials violated his due process rights by denying his grievances for "illegitimate" or "invalid" reasons or by employing "illegal grievance processes" fail to state cognizable federal civil rights claims.

The right of access to the courts is "founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of *fundamental* constitutional rights." *Lewis v. Casey*, 518 U.S. 343, 380 (1996) (Thomas J., concurring) (emphasis added); *see also Bounds v. Smith*, 430 U.S. 817, 825 (1977) (finding the constitution requires an inmate have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts"). Specifically, the constitution guarantees access to the courts only with respect to issues involving a direct or collateral attack on the prisoner's crime or conditions of confinement. *Id.* at 355. Thus, in order

to prove a violation of his constitutional right to access the courts, Martin must allege, among other things, that he needed the small-claims packet to bring a direct or collateral attack on his underlying crime or to challenge the conditions of his confinement. *Id.*

"Trimmed of legal conclusions and threadbare recitals of a cause of action," Martin's claim alleges Defendants would not give him a small claims packet so he could file a small claims suit against ODAC because he could not pay the $3.75 cost of the packet. (Am. Compl., ¶ 80); *Eclectic*, 751 F.3d at 998. He does not allege he needed the small claims packet to attack his underlying conviction or challenge conditions of his confinement. *Lewis*, 518 U.S. at 355. Accordingly, the court finds that Martin's claim in paragraph 80 does not contain sufficient factual allegations to state a plausible entitlement to relief.

D.  *Martin's Cruel and Unusual Punishment Claim in Paragraph 46.*

In paragraph 46 of his Amended Complaint, Martin alleges that defendant Payne subjected him to cruel and unusual punishment by threatening to make him "fall again" while he was handcuffed and in shackles and by writing a disciplinary report that resulted in Martin being placed in the intensive management unit ("IMU"). (Am. Compl., ¶ 46.) In the IMU unit, Martin was not afforded as many "privileges" and was on "lockdown" in his cell for approximately 23 hours a day. (*Id.*) Martin contends "additional days, weeks and months is also a penalty of the [disciplinary report]." (*Id.*)

To state a claim of cruel and unusual punishment in violation of the Eighth Amendment, a prisoner must show the alleged deprivation objectively posed a substantial risk of serious harm and the deprivation resulted in an "unnecessary and wanton infliction of pain." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Placement in segregation, by itself, is not cruel and unusual punishment because transfer of a prisoner to administrative segregation for non-punitive reasons

is well within the wide latitude afforded prisons to preserve internal order and maintain institutional security. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983) *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (finding no Due Process interest in being confined to a general population cell). Finally, the Eighth Amendment prohibits only imposition of a sentence "that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).

The court finds that Martin has not alleged facts sufficient to support an Eighth Amendment claim. Martin does not contend that his placement in segregation caused a substantial risk of harm to him or resulted in unnecessary or wanton infliction of pain. *Farmer*, 511 U.S. at 834. Instead, he alleges he lost privileges and had the potential to have additional time added to his sentence as a result of the disciplinary report. As noted above, however, neither placement in administrative segregation nor loss of privileges constitutes cruel and unusual punishment. *Hewitt*, 459 U.S. at 468. Similarly, the potential penalty of adding additional time to Martin's prison time does not give rise to an Eighth Amendment claim. *Rummel*, 445 U.S. at 271; *see also, Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979) (there is no "constitutional or inherent right" to parole). Accordingly, the court finds Martin fails to state a claim for relief in paragraph 46 of his Amended Complaint.

### E. *Martin's Deliberate Indifference Claims in Paragraphs 51, 70, and 71.*

Martin alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, in paragraph 51, Martin alleges that defendant Jennings did not give him a health snack or a lunch on May 25, 2013. (Am. Compl., ¶ 51.) Martin notes that denial of a single meal does not constitute deliberate indifference but asserts that the court should construe this as a constitutional violation because his meals were

intentionally withheld on more than one occasion. (*Id.*).  In paragraphs 70 and 71 of his Amended Compliant, Martin alleges he was denied dental care on December 9 and December 23, 2013, because he was unable to put on a sock due to his need for hip replacement surgery. (Am. Compl., ¶¶ 70-71.)  The court construes these two claims as deliberate indifference claims.

Repeated denial of meals may violate a prisoner's Eighth Amendment rights if the deprivation is severe enough. *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009).  In *Runnels*, the Ninth Circuit concluded that the denial of sixteen meals in twenty-three days was a "sufficiently serious deprivation" to constitute an Eighth Amendment violation because "food is one of life's basic necessities." *Id.*  Here, Martin alleges he was deprived of one meal and one snack on May 25, 2013. (Am. Compl., ¶ 51.)  Even combined with the alleged withholding of Martin's supper and health snack on March 19, 2013 — resulting in an allegation that Martin was denied two meals and two snacks over a sixty-seven day period — this does not rise to the severity required to establish an Eighth Amendment violation. *Foster*, 554 F.3d at 812.

To establish a claim for denial of adequate medical care under the Eighth Amendment, a prisoner must show prison officials demonstrated "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 104 (1976).  The prisoner must show he was confined under conditions "posing a risk of objectively, sufficiently serious harm and the officials had a sufficiently culpable state of mind in denying the proper medical care." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate inhumane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In other words, the prisoner must show the officials

purposefully acted or failed to act in response to the prisoner's medical need or pain and the official's indifference caused harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A fair reading of Martin's Amended Complaint, *i.e.* reading paragraphs 70 and 71 as part of his claims alleging denial of adequate dental care that are raised in paragraphs 66 to 73, suggests that Martin's teeth were painful. (Am. Compl., ¶¶ 66-73.) He also alleges that prison officials refused to take the course of action Martin wanted; instead of having his teeth pulled, he wanted them "restored or at least a partial." (Am. Compl., ¶ 69.) Martin does not, however, allege in paragraphs 70 and 71 that when prison officials "denied" his visit with the dentist they acted with deliberate indifference or had any culpable mindset. *Jett*, 439 F.3d at 1096. Instead, he makes the conclusory statement that he was denied his dental visit because he was unable to put on a sock. Martin does not name who "denied" his dental visit or allege the official responsible for the denial knew of either the pain he was experiencing or his need for dental care. At best, paragraphs 70 and 71 of Martin's complaint allege a negligent or inadvertent failure to provide adequate medical care, but this is not sufficient to state a claim under the Eighth Amendment. *Jett*, 439 F.3d at 1096); *see also Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment").

III. Eleventh Amendment Immunity

Finally, Defendants' motion for summary judgment on procedural grounds asserts that the Eleventh Amendment bars Martin's claim in paragraph 48 of his Amended Complaint and his claims against Defendants in their official capacities. "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Corp.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (internal citations omitted). A

court must examine the complaint and relief sought to determine whether the state is the "real party in interest." *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). The Eleventh Amendment also bars damages actions against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F. 3d 836, 839 (9th Cir. 1997).

Martin brings this action against Defendants in their official and individual capacities. (Am. Compl., ¶ 7.) As noted above, however, any claim for damages against Defendants in their official capacity in Martin's Amended Complaint is barred by the Eleventh Amendment because any judgment against Defendants in their "official" capacity subjects the state to liability. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

Martin's claim against defendant Payne in paragraph 48 of his Amended Complaint is similarly barred by the Eleventh Amendment. Martin alleges that defendant Payne defamed and slandered him when defendant Payne told another inmate that Martin was in prison for "siccing his dog on two little girls." (Am. Compl., ¶ 48.) To have an actionable claim under 42 U.S.C. 1983, a plaintiff must (1) allege injury to their reputation *inflicted in connection* with a federally protected right; or (2) allege that the injury to reputation *caused the denial* of a federally protected right." *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999) (internal quotations omitted) (emphasis in original). Martin alleges defendant Payne made false statements to another inmate for the purpose of encouraging other inmates to assault Martin. (Am. Compl.¶ 48.) As he does not allege defendant Payne injured his reputation in connection with a deprivation of any federally protected right or defendant Payne's false statement caused the denial of any constitutional right, Martin has not alleged a defamation claim cognizable under Section 1983.

PAGE 15 – FINDINGS AND RECOMMENDATION

To the extent that Martin alleges a state law defamation and slander claim against defendant Payne, this claim is barred by the Eleventh Amendment because the state must be substituted for individually named defendants.   Specifically, the Oregon Tort Claims Act requires individually-named defendants be dismissed from a plaintiff's state law claim and the State of Oregon substituted in their place.  *See* ORS 30.265(1) (the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only").   Once the State of Oregon is substituted as the sole defendant to Martin's defamation and slander claim, the court is required to dismiss the claim, because, under the Eleventh Amendment, a court may not hear a suit against an "unconsenting state."  *Brooks*, 951 F.2d at 1053.

IV.   Failure to Set Forth Any Genuine Issue of Material Fact.

In their motion for summary judgment for lack of genuine issue of material fact, Defendants argue that several of Martin's claims fail because they do not set forth a genuine issue of material fact.  As set forth above, the moving party bears the initial burden of pointing out the absence of a genuine issue of material fact, *see Celotex*, 477 U.S. at 325, then the non-moving party must set forth "specific facts showing there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

A.   *Martin's Due Process and Retaliation Claims in Paragraphs 47, 78, and 79.*

Defendants contend that Martin's claims in paragraphs 47, 78, and 79 of his Amended Complaint fail because he fails to show that a triable issue of fact exists regarding these claims. Martin alleges due process and retaliation claims in these paragraphs that all stem from the same incident on September 24, 2013.  (Am. Compl., ¶¶ 47, 78, and 79.)  Specifically, Martin alleges that defendants Lande, Graybill, and Brown destroyed "thousands" of legal notes in his cell by

pouring water on them and took "some" of his legal notes from his cell. (*Id.*)  He alleges defendants Lande, Graybill, and Brown were motivated by a desire to retaliate against him bringing lawsuits against SRCI staff and hoped to "prevent or dissuade" him from moving forward with his lawsuits. (*Id.*)

Martin grieved the September 24, 2013 incident. (Declaration of Vanessa A. Nordyke ("Nordyke Decl."), Attach. 6, p. 2, Dkt No. 70.)  His grievance stated that prison officials confiscated four pages of legal notes: "There were also 4 pages of legal notes taped to the wall in the cell.  Those legal rules were taken from the cell.  They've not been returned."  (*Id.*) Neither the grievance nor Martin's appeal mentioned water damage to "thousands" of legal documents in his cell.  Moreover, the responses to Martin's grievance and appeal states that no legal documents were confiscated from his cell on September 24, 2013. (*Id.* at pp. 3,6.)

Defendants and the court understand Martin to advance a substantive due process argument as opposed to a procedural due process claim.  A procedural due process claim acknowledges the state's objective is within its lawful authority, but that the process of achieving the objective does not give the person subjected to the state's actions adequate procedural process.  *See, e.g., Goldberg v. Kelly,* 397 U.S. 254 (1970) (state cannot deprive a person of entitlement to welfare without notice and a prior hearing).  On the other hand, a substantive due process claim asserts that the state's objective is beyond its lawful authority, regardless of how many procedural safeguards it provides.  *See, e.g., Griswold v. Connecticut,* 381 U.S. 479 (1965) (a state cannot punish a person for using contraception).  Here, Martin does not allege that he was provided with a constitutionally inadequate grievance process; instead, he appears to contend that depriving him of his "legal papers," either through confiscation or destruction, is itself unlawful.

PAGE 17 – FINDINGS AND RECOMMENDATION

"To establish a violation of substantive due process . . ., a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, quotations, and brackets omitted), overruled in part on other grounds as recognized by *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007). As an initial matter, the court finds that the inconsistency between the allegations in Martin's grievance (four pages of legal notes were taken from his cell) and in his Amended Complaint (water was dumped on the table containing "thousands" of legal documents and some legal notes were taken) damages the credibility of Martin's substantive due process claims. Defendants have produced admissible evidence establishing Martin's notes were not taken from his cell, but instead were removed from the wall where they were taped and placed on a table in his cell. (Nordyke Decl., attach. 6, p. 3, Dkt No. 70). Martin has not responded with any specific issues of fact showing a genuine issue for trial on either the confiscation or destruction of his legal papers. *Matsushita*, 475 U.S. at 587. Accordingly, the court finds Martin has not established that Defendants took any arbitrary or unreasonable actions against him, and thus, Defendants are entitled to summary judgment on Martin's substantive due process claims in paragraphs 47, 78, and 79.

To move forward on his retaliation claim in paragraphs 47, 78, and 79, Martin must show a triable issue of fact regarding whether Defendants took adverse action against him because he engaged in protected activity. As stated above, Martin has not met his burden at summary judgment of establishing a viable issue of fact concerning whether Defendants deprived him of his legal papers either by destruction or confiscation. Accordingly, Defendants are entitled to summary judgment on his retaliation claims in paragraphs 47, 78, and 79.

*B. Martin's Retaliation Claim in Paragraph 50.*

In paragraph 50 of his Amended Complaint, Martin asserts defendant Jennings retaliated against him for filing grievances and suing the ODAC by intentionally putting "thousands of pages" of Martin's legal work in disarray during a search of his cell. (Am. Compl., ¶ 50.) Defendants assert they are entitled to summary judgment on this claim because Martin cannot establish a genuine issue of material fact regarding all five elements of a First Amendment retaliation claim. The crux of a retaliation claim is an adverse action that would have a chilling effect on a person of ordinary firmness from exercising his or her First Amendment rights. *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Although it is a close call, the court cannot find a viable issue of fact exists regarding whether Defendants subjected Martin to an adverse action exists. As Defendants point out, cell searches are a fact of prison life. (Fact Summ. J. Mot., p. 7, Dkt No. 69 (citing OAR 291-041-0005 (2).) Guards are "expected" to leave the searched area "in an orderly and neat condition" but are not required to leave papers in their original order. (*Id.* at p. 8.) In short, searches that leave the contents of an inmate's cell out of order are an expected event in prison life. Even when viewing the evidence in a light most favorable to Martin, the court cannot find that an isolated incident in which defendant Jennings searched his cell and left his legal papers in disarray would chill a person of ordinary firmness from engaging in protected activity. Accordingly, Defendants are entitled to summary judgment on Martin's retaliation claim in paragraph 50.

*C. Martin's Deliberate Indifference Claims.*

Martin's Amended Complaint alleges deliberate indifference in violation of the Eighth Amdendment by several named defendants to his serious medical condition of Hepatitis C, his left leg and hip pain, and dental care needs. Defendants assert they are entitled to summary

judgment on his deliberate indifference claims because Martin cannot establish a triable issue of fact regarding these claims.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105; *see also Jett*, 439 F.3d at 1096. A prisoner has a serious medical need if "the failure to treat a prisoner's condition could result in significant further injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal quotations omitted). "The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S.1, 6 (1992)). In some cases, however, a court must balance the "competing tensions" between "the prisoner's' need for medical attention and the government's need to maintain order and discipline" when determining the prison official's subjective intent. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). Generally, a difference of opinion between the prisoner and the physician concerning the appropriate course of treatment does not constitute deliberate indifference to serious medical needs. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

*1. Martin's Claims in Paragraphs 23-24, 26, 48, 56, 59, 65.*

In paragraphs 23, 24, and 26 of his Amended Complaint, Martin alleges that he did not receive his Hepatitis C medication between July 2012 and November 2012, and on February 20, 2013. As noted above, Defendants are entitled to summary judgment on these claims because Martin failed to exhaust his administrative remedies. *See supra* Section IA. These claims also fail because Martin has not met his burden at summary judgment of setting forth specific facts

showing there is a genuine issue for trial regarding an Eighth Amendment violation for failure to give him Hepatitis C medicine between July and November 2012, and on February 20, 2013. Defendants have produced admissible evidence that establishes Martin received treatment for his Hepatitis C between June 2012 and May 2013. (Declaration of Garth Gulick "Gulick Decl."), ¶¶ 50, Dkt No. 71.) Extensive testing showed that Martin's Hepatitis C treatment worked and his condition improved. (*See, e.g., Id.* at ¶¶ 57-69, 72, 74.) In short, the record taken as a whole could not lead a rational trier of fact to conclude that Defendants were deliberately indifferent to Martin's serious medical needs by failing to give him his Hepatitis C medications between July and November 2012, and on February 20, 2013. *Matsushita*, 475 U.S. at 587. To the contrary, the record establishes that Defendants were cognizant of and responsive to the risks to Martin's health. *Farmer*, 511 U.S. at 834.

Martin alleges a claim of deliberate indifference based on Dr. Gulick's refusal to order a liver biopsy or refer Martin to an infectious disease specialist for Hepatitis C. (Am. Compl., ¶ 56.) Defendants have produced admissible evidence showing that a liver biopsy and referral to a specialist were not necessary because Martin's lab results indicated he did not have cirrhosis of the liver. (Gulick Decl., ¶¶ 65, 68, Dkt No. 71.) Martin has not met his burden on summary judgment of setting forth specific issues of fact regarding his claim in paragraph 56.

Martin further alleges that Defendants should have prescribed him Gabapentin for pain instead of Tramadol for his Hepatitis C. (Am. Compl., ¶ 59.) The record here shows that Martin's medical team considered what pain medication to give him multiple times, and ultimately choose to continue prescribing Tramadol. (Gulick Decl., ¶¶ 10, 15-16, 56, 67, 70-71, 73, 76, Dkt No. 71.) Martin's difference of opinion with his medical team concerning the

appropriate painkiller for him to take does not constitute deliberate indifference to serious medical needs. *Toguchi*, 391 F.3d at 1058.

### 2. *Martin's Left Hip and Leg Pain.*

In paragraphs 55, 57, and 61[3] of his Amended Complaint, Martin alleges that defendant Gulick was deliberately indifferent to his serious medical needs by refusing to refer him to an orthopedic surgeon for evaluation of his left hip. Defendants have submitted admissible evidence that establishes that Martin received adequate medical treatment for his left leg and hip pain. (Gulick Decl., ¶¶ 33-43, Dkt No. 71.) Starting in June 2013, Martin complained of pain in his left hip. (*Id.* at ¶ 34.) Although medical findings revealed Martin had "moderately severe" bilateral hip degenerative joint disease, he had a good ability to sit and stand, full strength in his leg, and no loss of function. (*Id.* at ¶¶ 34, 37.) Based on Martin's complaints of pain, defendant Gulick prescribed painkillers for him. (*Id.* at ¶ 35.)

In January 2014, approximately six months after his initial complaints of pain in his left hip, Martin was admitted to the infirmary complaining of pain in his *right* hip. (*Id.* at ¶ 42.) He was referred to an orthopedic surgeon for a consultation regarding his right hip. (*Id.* at ¶ 43.) The specialist recommended replacement of Martin's *right* hip and replacement of his left hip after he sufficiently recovered from the first hip replacement. (*Id.*) The record shows that Defendants reasonably responded to Martin's complaints about his left hip and that any delay in his treatment did not result in significant injury or in the unnecessary or wanton infliction of pain. *McGuckin*, 947 F.2d at 1059-60. Accordingly, a rational trier of fact could not find for Martin on his claim that Defendants were deliberately indifferent to his left leg and hip pain. *Matsushita*, 475 U.S. at 587.

---

[3] Martin's claims in paragraphs 55 and 61 are also barred for failure to exhaust administrative remedies. *See supra* Section IA.

### 3. *Martin's Right Leg and Hip Pain.*

Martin alleges that defendant Gulick was deliberately indifferent to his right leg and hip pain by refusing to allow Martin to be evaluated by an orthopedic specialist on June 13, 2013. In evaluating whether a prison official acted with deliberate indifference to a prisoner's serious medical condition, the court should consider whether a reasonable doctor would think the condition is worthy of comment, whether the condition significantly affects the prisoner's daily activities, and whether the condition is chronic and accompanied by substantial pain. *McGuckin,* 974 F.2d at 1059-60. Defendants have produced admissible evidence that establishes that Martin only reported medical symptoms warranting a right hip replacement in early 2014. (Gulick Decl., ¶¶ 10-16, Dkt No. 71.) A June 6, 2013, x-ray revealed moderately severe degenerative changes to Martin's right hip. (*Id.* at ¶ 9; attach. 1, pp. 120.) A few days later, on June 11, 2013, Martin reported a pain level of three out of ten for his right hip. (*Id.* at ¶ 10.) As of December 2013, because of Martin's relatively young age (forty) and the fact that he could walk, sit, and stand perfectly, Dr. Gulick decided that hip joint replacement was not a viable option for Martin. (*Id.* at ¶¶ 14-15.)

When Martin's condition changed in January 2014, however, defendant Gulick re-evaluated Martin's need for a hip transplant. (*Id.* at ¶¶ 17-18.) Indeed, very shortly after Martin reported significant pain in his right leg and hip and an ultrasound indicated advanced arthritic changes to his right hip, he received a hip replacement. (*Id.* at ¶¶ 17, 19-20, 26.) Based on this record, a rational trier of fact could not find that Defendants were deliberately indifferent to or delayed treatment for Martin's right leg and hip pain. *Matsushita,* 475 U.S. at 587.

\ \ \ \ \

\ \ \ \ \

#### 4. *Martin's Hypoglycemia.*

In paragraph 58 of his Amended Complaint, Martin alleges that defendant Gulick was deliberately indifferent to his serious medical needs by refusing to give him snacks to help him "alleviate the pain from the headaches" caused by his Hypoglycemia. (Am. Compl., ¶ 58.) As noted above, to state a cognizable deliberate indifference claim under the Eighth Amendment, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious medical needs.*" *Estelle*, 429 U.S. at 106 (emphasis added). In other words, a prisoner must establish that he or she has a serious medical need that has not been treated in a timely or proper manner. *Id.* at 104. Defendants have offered admissible evidence that shows Hypoglycemia is not a serious medical condition. (Gulick Decl., ¶ 81, Dkt No. 71.) Defendants have shown Martin received information on how to prevent Hypoglycemia and the accompanying headaches through diet choices. (*Id.* at ¶¶ 81-83, 87.) Additionally, Defendants offer evidence that Martin refused meals in order to force ODAC to move him to a cell of his choosing. (*Id.* at ¶ 82); *see, e.g., Rodriquez v. Briley,* 403 F.3d 952 (7th Cir. 2005) (finding no Eighth Amendment violation when inmate was denied meals and showers for failing to comply with prison rules because inmate "punished himself" by refusing to comply with a reasonable prison condition). Martin has not meet his burden at summary judgment of presenting specific facts creating a triable issue of fact regarding whether Hypoglycemia is a serious health condition and, if so, whether Defendants were deliberately indifferent to this condition. *Matsushita*, 475 U.S. at 587.

#### 5. *Martin's Dental Care.*

In paragraphs 66-69, 73 and 74 of his Amended Complaint, Martin contends that defendant Litano and the Dental Therapeutic Level of Care ("TLC") committee were deliberately

indifferent to his serious medical needs by denying his request for restoration of his teeth and for partial dentures and pulling them instead without his consent. (Am. Compl., ¶ 66-69, 73 and 74.) Martin's Amended Complaint reflects he had severe pain in some of his teeth, and Martin wished to have his teeth "restored" through a root canal and crown instead of having them pulled as Defendants recommended. (*Id.*) Defendants have submitted admissible evidence establishing that Martin received dental care to address the pain in his teeth and that he eventually consented to having his diseased teeth pulled. (Declaration of Greg Shook, D.M.D. ("Shook Decl."), ¶¶ 9-27, Dkt No. 72.) Although the record does reflect that Martin wished to have his teeth restored instead of pulled, Martin's difference of opinion about the appropriate course of his dental treatment does not give rise to a viable issue of material fact regarding whether Defendants were deliberately indifferent to his serious dental needs. *Toguchi*, 391 F.3d at 1058 (difference of opinion between prisoner and physician concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs). The court finds there is no issue for trial because record taken as a whole could not lead a rational trier of fact to find for Martin on his denial of dental care claims. *Matsushita*, 475 U.S. at 587.

### D. Qualified Immunity for Defendants.

Defendants assert qualified immunity shields them from liability for Martin's deliberate indifference claims. Generally, prison officials performing discretionary functions "are entitled to a qualified immunity, shielding them from civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *Saucier v. Katz*, 533 U.S. 223, 231 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223,

236 (2009). The court first considers whether the facts "[t]aken in a light most favorable to the party asserting the injury . . . show the [defendants'] conduct violated a constitutional right[.]" *Saucier,* 533 U.S. at 201. Next, the court determines whether the right was clearly established at the time of the alleged injury. *Id.*

Here, the "initial inquiry" establishes, even taking Martin's allegations in a light most favorable to him, no constitutional right was violated. *Id.* ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") Instead, the record viewed in a light most favorable to Martin shows that, although Martin had a difference of opinion with his physicians and dentist (and the TLC committee) of what was the most appropriate course of care, he received adequate medical care for his serious medical needs. *Toguchi,* 391 F.3d at 1058. Accordingly, there is no need for further inquiry regarding whether qualified immunity shields Defendants from liability.

   *E. Martin's Claim for Injunctive Relief.*

Martin seeks injunctive relief in his Amended Complaint. (Am. Compl., ¶¶ 85-87.) Martin appears to no longer be in the ODOC's custody; instead he is in the custody of the Lane County Sherriff's office. (Plf.'s Notice of Change of Address.) There is no indication that Martin has a reasonable expectation of returning to the ODOC's custody. Accordingly, his requests for injunctive relief are moot. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

   *F. Martin's Claim for Punitive Damages.*

Martin seeks an award of punitive damages in his Amended Complaint. (Am. Compl., ¶ 89(F)-(I).) He has not, however, established that he is entitled to relief on any of his claim. Even if the court were to assume *arguendo* that Martin had established any viable claim for relief, he still would not be entitled to punitive damages because the PLRA does not allow for

recovery of punitive damages in cases where a prisoner has not suffered a physical injury.  42 U.S.C. § 1997e(e).  Here, Martin has only alleged the *potential* for future physical injury, not any actual physical injury.

V. Doe Defendants.

Martin's Amended Complaint alleges three claims against Doe defendants.[4]  (Am. Compl., ¶¶ 12-14.)  These claims allege that Martin did not receive mail sent to him, that mail Martin sent was not received by the intended recipient and that Martin did not receive magazines to which he subscribed.  (*Id.*)d  After review of Martin's claims against the "Doe" defendants, the court finds that Martin has failed to demonstrate that any "Doe" defendant participated in the deprivation of his rights as required by Section 1983.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002).  In other words, there must be an actual connection or link between the actions of the "Doe" defendants and the deprivation alleged to have been suffered by Martin.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, (1978).  Because Martin fails to establish how any of the "Does" personally participated in the alleged deprivation of his First Amendment Rights, his claims against the "Doe" defendants fail to give rise to a constitutional claim.  Accordingly, these claims should be dismissed from this action.

*Conclusion*

For the reasons stated above, Defendants' partial motions for summary judgment (Dkt Nos. 68 and 69) should be granted, and Martin's claims against Defendants should be dismissed with prejudice.   Moreover, because they fail to state a constitutional claim, Martin's claims against the "Doe" defendants should be dismissed with prejudice.

///

---

[4] Defendants' partial motions for summary judgment do not address Martin's claims against the "Doe" defendants.  (Fact Mot. Summ. J., p. 1, Dkt No. 69).

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due seventeen (17) days from the date of entry of this Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within seventeen (17) days from the date of service of a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this _5th_ day of July, 2016.

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 28 – FINDINGS AND RECOMMENDATION